# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NICCO T. BARNETT, | ) |
| Petitioner, | ) |
| v. | ) No. CIV-12-897-W |
| TIM WILKINSON, | ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION

Petitioner Nicco T. Barnett, a state prisoner appearing *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 1) (Petition), challenging the constitutionality of his state court conviction for First Degree Murder. Respondent has filed a Response to Petition for Writ of Habeas Corpus, (ECF No. 15) (Response). For the reasons set forth below, it is recommended that the petition be **DENIED**.

### I.   Relevant Case History and Issues Presented

On June 4, 2010, Petitioner was convicted of First Degree Murder after a jury trial in the District Court of Oklahoma County, State of Oklahoma, Case No. CF-08-4405. Petitioner was sentenced to Life imprisonment with possibility of parole. (Petition at 1).

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA), Case No. F-2010-559. (*See* Response, Ex. 3 (Summary Opinion of the OCCA)). The OCCA affirmed Petitioner's conviction and sentence. (*Id.*). Petitioner then timely

filed this habeas action raising the same four grounds for relief he presented to the OCCA: (1) that Petitioner's warrantless arrest violated his rights under the Fourth Amendment of the United States Constitution; (2) that Petitioner's Fifth Amendment right against self-incrimination was neither knowingly nor voluntarily waived, resulting in an inadmissible confession; (3) that the trial court erred under Oklahoma law in admitting into evidence a photograph of the victim, Vanessa Swaissi, that did not accurately reflect how she appeared on July 31, 2008; and (4) that the cumulative effect of the trial court's errors deprived Petitioner of due process (Response Ex. 4 at 1-2). The OCCA affirmed Petitioner's conviction and sentence.

## II.   The Evidence Presented at the Trial

This summary of the evidence, based on the trial transcripts, the briefs of the parties and the exhibits attached to the briefs, is intended to provide a context for the analysis of Petitioner's grounds for relief.

Around 4:30 p.m. on July 31, 2008, Vanessa Swaissi and Ashley Stephenson arrived at a Shell filling station located at the corner of 63rd Street and the Broadway Extension in Oklahoma City. Ms. Swaissi was driving her white, two-door Cadillac Eldorado, and Ms. Stephenson was her passenger. The two women were on their way to Rose State College, where both were enrolled, so that Ms. Swaissi could take a make-up test. Earlier that day, Ms. Swaissi had spoken several times via cell phone with Laverie Franklin, to whom she had been introduced by a mutual friend, about a car

stereo she wished to sell. Eventually, she and Mr. Franklin arranged to meet at the aforementioned filling station.

According to Ms. Stephenson, Ms. Swaissi recognized Mr. Franklin when he and Petitioner walked towards them. While Ms. Swaissi was inside the filing station, Ms. Stephenson opened the trunk of the Cadillac and showed the stereo to Mr. Franklin and Petitioner. When Mr. Franklin produced no money, Ms. Stephenson told Mr. Franklin that they would keep the stereo until he had the money. Mr. Franklin then asked Ms. Stephenson if the women would give him and Petitioner a ride.

Upon her return to the car, Ms. Swaissi agreed to give the two men a ride, and Mr. Franklin and Petitioner got into the back seat of the car. Ms. Swaissi left the Shell station and headed east on 63rd Street. Shortly after leaving the station, Ms. Stephenson heard a gun being cocked. She turned around and saw Mr. Franklin hand a gun to Petitioner. Petitioner held the gun to Ms. Swaissi's head and demanded that the women pull the car over and give them all their money. He threatened to shoot Ms. Swaissi if his demand was not met. At that point, Ms. Stephenson pulled out a large fishing knife from the passenger door and began stabbing at the men in the back seat. One of the men grabbed her arm and stole her wrist watch.

One of the witnesses to these events testified that he was a passenger in a car headed west bound on 63rd Street when he saw the fight taking place in Ms. Swaissi's car. As Ms. Swaissi's car came to a stop in a driveway, the witness asked the driver of the car in which he was riding to pull to the side of the road and stop. The witness then

ran toward Ms. Swaissi's Cadillac to offer help. The witness saw a man, later identified as Laverie Franklin, climb out of the passenger side window of the Cadillac, run to the other side of the Cadillac and pull another man, later identified as Petitioner, out through the driver's side of the car. While Petitioner was escaping from the car, the witness heard Mr. Franklin say, "pop that bitch, pop that bitch." The witness heard a gunshot and saw a flash of light. Ms. Swaissi fell from the car onto the pavement and was pronounced dead at the scene. Ms. Stephenson identified Petitioner as the man who pulled the trigger and shot Ms. Swaissi.

After escaping from the backseat of the Cadillac, Mr. Franklin and Petitioner ran north through a park bordering 63rd Street and managed to evade the police. They were arrested and taken into custody two days later.

## III. Standard of Review

The four propositions of error raised by Petitioner were exhausted in state court proceedings. The grounds subject to habeas review are, therefore, controlled by the standard of review set forth in the Anti-terrorism and Effective Death Penalty act of 1996 (AEDPA). Under AEDPA, a court may grant a petitioner federal habeas relief only if the challenged state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Under this standard, judicial review is directed

4

to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004)("[W]e defer to the [state court's] decision unless we conclude that its result -- not its rationale--is 'legally or factually unreasonable'").

Whether the law is clearly established is a threshold inquiry. *See House v. Hatch*, 527 F.3d 1010, 1017-1018 (10th Cir. 2008). The absence of clearly established federal law is dispositive of the § 2254(d)(1) analysis. *Id.* at 1017. Thus, only if the court determines that the law is clearly established does it proceed to determine whether the state court decision is either contrary to or an unreasonable application of that law. *Id.* at 1018.

A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. *Williams v. Taylor*, 529 U. S. 362, 405-406 (2000). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" *Thaler v. Haynes*, 531 U.S. 43, 47 (2010).

A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts in the Petitioner's case. *Williams*, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply

5

because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

## III. Analysis

### A. Ground One: Petitioner's Fourth Amendment Claim

Petitioner contends the police lacked probable cause to effect his warrantless arrest, in violation of the Fourth Amendment. Because he confessed to the murder of Vanessa Swaissi after his arrest, Petitioner contends his confession should have been suppressed. (Petition at 6).

The facts surrounding Petitioner's arrest are undisputed. During the investigation into the murder of Vanessa Swaissi, detectives received an anonymous tip identifying Laverie Franklin and Rico Proctor as the men involved in the murder. The anonymous tipster also told police where the two were. Arrest warrants were issued for these two men. Petitioner and Franklin were arrested at an apartment rented by Leshay Franklin, Laverie Franklin's cousin. On the night of the arrests, Ms. Franklin saw the police outside her window and stepped outside to talk to them. The police asked Ms. Franklin if Laverie Franklin were in her apartment. Ms. Franklin consented to letting the police search her apartment. The officers found Mr. Franklin and Petitioner hiding in a closet under a pile of clothes. Police executed the arrest warrant on Mr. Franklin. But their second warrant named "Ricco Proctor," not "Nicco Barnett." Nevertheless, the arresting

6

officers handcuffed Petitioner and took both men to the Oklahoma City Police Department for questioning.

On direct appeal, Petitioner challenged the constitutionality of his warrantless arrest, claiming the police lacked probable cause to make the arrest, in violation of the Fourth Amendment. The OCCA considered this ground for relief for plain error and concluded that the arresting officers had probable cause to arrest Petitioner without a warrant.

> Despite the fact that the District Court had issued an arrest warrant for a different individual, officers had a reasonable suspicion, grounded in specific and articulable facts, that [Petitioner] was involved in criminal activity. *Coulter v. State*, 1989 OK CR 42, ¶5, 777 P.2d 1373, 1374; *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985); *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, L.Ed.2d 889 (1968). When the Oklahoma City Police Department executed the arrest warrant upon the Co-Defendant, they found [Petitioner] hiding with him under a pile of clothes. [Petitioner] matched the physical description of the other suspect in the offense, and was named as participating in the offense by the party that disclosed their location to the officers. As such, the officers lawfully detained [Petitioner] to investigate this suspicion. *Id.* Reviewing the totality of the circumstances, the officer's restraint of [Petitioner] during the detention was reasonable. *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 299 (1985). In light of the severity of the offense involved, [Petitioner's] use of a firearm, the presence of numerous individuals in the apartment that evening, and [Petitioner's] attempt to evade the officers by hiding under the clothes, the officers' use of handcuffs was justified. *Muehler v. Mena*, 544 U.S.93, 98-99, 125 S.Ct. 1465, 1470-71, 161 L.Ed.2d 814 (2003).
>
> While the officers were determining [Petitioner's] identity, the Co-Defendant named [Petitioner] as the individual that shot the

> victim. Very soon thereafter, the occupant of the apartment, in which [Petitioner] was discovered, informed the officers that [Petitioner] had confessed to shooting the victim. As such, the officers had probable cause to believe that [Petitioner] had committed a felony offense when they involuntarily transported him to the police station. *Kaupp v. Texas*, 538 U.S. 626, 630, 123 S.Ct. 1843, 1846, 155 L.Ed.2d 814 (2003). This proposition is denied.

(Response, Ex. 3 at 3).

It is evident that the OCCA carefully reviewed the evidence and relied on clearly established Supreme Court law in reaching its decision regarding Petitioner's Fourth Amendment challenge to his warrantless arrest. Because Petitioner was given a full and fair opportunity to litigate this claim before the OCCA, Respondent correctly contends that Petitioner's first ground for relief is not cognizable in this federal habeas action.

In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held that state prisoners may not be granted federal habeas relief based on a Fourth Amendment claim, if the state had "provided an opportunity for full and fair litigation" of the claims. *Matthews v. Workman*, 577 F.3d 1175, 1194 (10th Cir. 2009) (*quoting Stone*, 428 U.S. at 494). Where, as here, the OCCA has "'thoughtfully considered the facts underlying [Petitioner's] Fourth Amendment claim and rejected the claim on its merits, applying the appropriate Supreme Court precedent,'" *Stone v. Powell* bars this Court from considering Petitioner's Fourth Amendment claim. *Brown v. Sirmons*, 515 F.3d 1072, 1083 (10th Cir. 2008); *see also Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming denial of federal habeas relief based on alleged Fourth Amendment

violations because the "petitioner's appellate counsel [had] presented the issue to the [Oklahoma Court of Criminal Appeals] on direct appeal."). Thus, the Court should deny relief on Ground One.

### B. Ground Two: Voluntariness of Petitioner's Confession

In his second ground for relief, Petitioner relies on *Miranda v. Arizona*, 384 U.S. 436 (1966), to support his contention that he did not knowingly and voluntarily waive his Fifth Amendment privilege against self-incrimination and that, therefore evidence of his confession should have been suppressed by the trial court.

Because Petitioner challenged his confession as inadmissible based on his allegedly involuntary and unknowing waiver of his privilege to be free of self-incrimination, the trial court held a pretrial *Jackson v. Denno* hearing as required by Supreme Court law.[1] (*See* Response, Ex. 4 (Transcript of Proceedings, Motion Hearing Had on September 24, 2009)).

After Petitioner was taken into custody, detectives Chris Miller and William Lord interviewed him during the evening of August 2, 2008. (Response, Ex. 4 at 42-45). A second interview took place the next day at Petitioner's request. (Response, Ex. 4 at 60-62). Both interviews were recorded on DVDs, (Response, Ex. 4 at 55, 61), and the

---

[1] *Jackson v. Denno*, 378 U.S. 368 (1964) held that defendants have a constitutional right, at some stage in the proceedings, to object to the admission of a confession, to have a fair hearing on the admissibility of the confession, and to have a reliable determination on the issue of voluntariness. *Id.* at 376-77.

trial court had viewed the DVDs before the hearing (Response, Ex. 4 at 41). (Transcript of Proceedings, Motion Hearing, Had on September 24, 2009).

The DVD recording of the August 2, 2008 interview, (Response Ex. 7),[2] depicts Detective Miller reading the *Miranda*[3] warnings to Petitioner, and asking if he understood the warnings that had just been read to him. Petitioner responded, "Yes sir." But when Detective Miller asked Petitioner whether he wanted to talk to the two detectives, Petitioner replied, "Huh," which prompted Detective Miller to again ask whether Petitioner understood the rights he had been read. Petitioner stated that he did. When Detective Miller asked again whether, having those rights in mind, Petitioner wished to talk to the two detectives, Petitioner asked if he had a choice. Detective Miller again asked whether Petitioner understood the rights he had been read. During the second reading of the *Miranda* warnings, Detective Miller stopped after each sentence and asked Petitioner whether he understood that sentence. Petitioner orally acknowledged that he did understand. When Detective Miller asked, "Now that you understand those rights, having those rights in mind, would you like to talk to us? We would like to ask you about this." At that point, Petitioner told the detectives that he was waiting for them to ask questions. Detective Miller again asked whether Petitioner

---

[2] Respondent has included citations to the time each quoted statement was made. The time stamps do not appear on the DVDs provided to this Court. The undersigned has viewed both recordings, however, and verified the statements made.

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966) ("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.").

wanted to talk to them. Petitioner answered that he would listen to the detectives. Detective Miller then stated, "What it boils down to is do you want to talk to me tonight without an attorney?" Petitioner asked if having an attorney would make a difference. In an apparent attempt to determine Petitioner's level of comprehension, Detective Miller asked Petitioner how old he was, and Petitioner answered, "Eighteen." Detective Miller asked if Petitioner had done alright in school, and Petitioner replied, "Eleventh grade." Detective Miller asked whether Petitioner had any learning disabilities, and Petitioner replied, "Yes, Sir. I do." When Detective Miller asked if Petitioner knew where he was and what was going on, Petitioner laughed and answered, "Yes, sir. I know where I'm at. I know you all got us down here for questioning."

Detective Miller then explained he was a homicide detective investigating a homicide in which Petitioner was a suspect. Petitioner asked why he was a suspect, and Detective Miller stated he would answer Petitioner's questions after he had made sure that Petitioner understood his rights and desired to speak with him without an attorney present. After Petitioner's unintelligible answer, Detective Miller asked, "Do you want to talk to us?" and went on to say, "I need a yes or..." Before Detective Miller could finish his sentence, Petitioner interrupted saying, "Yes, sir. Yes, sir."

Petitioner did not confess to his involvement in the homicide during the first interview. Instead, he attempted to convince the detectives that he was not at the Shell station and took no part in the homicide of Vanessa Swaissi. Detective Miller candidly informed Petitioner that he was under arrest for homicide and would be incarcerated in

the Oklahoma County Jail that night. The detectives also informed Petitioner that witnesses to the events had given statements placing Petitioner at the scene of the homicide. Ultimately, Petitioner told the detectives to take him to jail and asked, "When can I get my attorney-lawyer, whatever?" Detective Miller immediately terminated the interview and the two detectives left the room.

The Supreme Court has held that a court's inquiry into a waiver's validity has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citations and quotations omitted). The Tenth Circuit has explained that the "totality of the circumstances" may include the crucial element of police coercion, the length of the interrogation and its continuity, the defendant's maturity, education, physical condition, and mental health, and the failure of the police to advise the defendant of his rights to remain silent and to have counsel present during the custodial interrogation. *Trice v. Ward*, 196 F.3d 1151, 1170 (10th Cir. 1999) (internal quotations omitted) (*quoting Withrow v. Williams*, 507 U.S. 680, 693-94 (1993)). *See also Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("[C]oercive police

activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause.")

With regard to the August 8, 2008 interview, the trial court found that Detective Miller appropriately advised Petitioner of his *Miranda* rights and that Petitioner had understood his rights and had effectively waived them. (Response Ex. 4 at 75).

On August 9, 2008, some fifteen hours after the first interview, Petitioner asked to speak to the detectives. Detective Miller began the interview by asking Petitioner if it were true that Petitioner had asked jail staff to bring him to the Oklahoma City Police Station for a second interview. (Response Ex. 8). Petitioner nodded his head. Detective Miller then asked Petitioner, "Do you need me to remind you of your *Miranda*? You know that you still have the right to remain silent and all that, okay?" Petitioner stated that he was worried about his son. Thereafter, Petitioner confessed to participating in the robbery/homicide.

The OCCA considered the merits of Petitioner's claim that his confession was the result of an unknowing and involuntary waiver of his Fifth Amendment privilege against self-incrimination and found that the totality of circumstances indicated Petitioner's waiver of his rights was knowing and voluntary:

> As to proposition II, we find that the trial court's decision to admit [Petitioner's] custodial confession is supported by competent evidence of the voluntary nature of the statement. *Young v. State*, 2008 OK CR 25, ¶ 19, 191 P. 3d 601, 607; *Davis v. State*, 2004 OK CR 36, ¶ 34, 103 P.3d 70, 80. Reviewing the totality of the circumstances surrounding the interrogations, [Petitioner's] waiver was the product of a

13

> free and deliberate choice and was made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.ED.2d 410,421 (1986); *See also Berghuis v. Thompkins*, ___ U.S. ___, 130 S. Ct. 2250, 2261-62, 176 L.Ed.2d 1098 (2010). This proposition is denied.

(Response Ex. 3, at 3-4). This Court must review the OCCA's decision on the issue raised in Ground Two under the AEDPA standard of review. Thus, this Court may grant habeas relief only if the OCCA's decision was either contrary to, or involved an unreasonable application of clearly established Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented.

The OCCA's decision cites to and relies on clearly established Supreme Court law. Therefore, this Court's power to grant Petitioner habeas relief based on a violation of the Fifth Amendment hinges on whether the OCCA reasonably applied the clearly established Supreme Court law and whether the OCCA's determination of the facts, in light of the evidence presented, was reasonable. The evidence of record in this case supports the OCCA's decision. Because the OCCA's resolution of Petitioner's second ground for relief is neither contrary to, nor an unreasonable application of Supreme Court law, nor an unreasonable determination of the facts in the light of the evidence presented, habeas relief is not warranted.

### C. Ground Three: Admission of Victim's Photograph

Pursuant to Okla. Stat. tit 12 § 2403, "in the prosecution of a criminal homicide," an appropriate photograph of the victim while alive shall be admissible evidence when

offered by the district attorney to show the general appearance and condition of the victim while alive." Petitioner contends, however, that the admission of the photograph of Ms. Swaissi was in error because it was not a recent photograph and did not, therefore, reflect the way Ms. Swaissi looked at the time of her death. (Petition at 16, 19).

The OCCA denied Petitioner's third proposition of error stating that the "trial court did not abuse its discretion in the admission of the in-life photograph of the victim." (Response, Ex. 3 at 4).

Federal habeas review is not available to correct state-law evidentiary rulings including the admission of photographs. *See Spears v. Mullin*, 343 F.3d 1215, 1226 (10th Cir. 2003) (when reviewing a habeas claim involving the admission of photographs, the court considers whether the evidence infected the proceedings with sufficient unfairness that it rendered the jury's verdict a denial of due process). *See also Smallwood v. Gibson*, 191 F. 3d 1257, 1275 (10th Cir. 1999) ("the essence of our inquiry [on federal habeas corpus review]. . . is whether the admission of the photographs rendered the proceedings fundamentally unfair." (internal citation omitted)). In this case, one photograph of Ms. Swaissi was introduced as allowed by State law. The introduction of the photograph in question did not render Petitioner's trial fundamentally unfair. Accordingly, Petitioner's third ground does not merit federal habeas corpus relief.

15

### D. Ground Six: Cumulative Error

Petitioner claims that cumulative error arising out of the claims raised in Grounds One through Three of the Petition deprived him of a fundamentally fair trial in violation of his due process rights. The OCCA denied this claim stating simply, "In Proposition IV, we find [Petitioner] was not denied a fair trial by cumulative error. (Response, Ex. 3 at 4).

In reviewing a claim of cumulative error, a court may consider only actual errors for purposes of determining whether a due process violation has occurred. *See Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002) ([A] cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."). This Court has reviewed the claims raised in the other grounds for habeas relief and has found no errors, much less multiple errors, that could result in cumulative error. Therefore, this claim is without merit.

### RECOMMENDATION

It is recommended that Petitioner's Petition for Writ of Habeas Corpus, (**ECF No. 1)**, be **DENIED.**

### NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **December 15, 2014**, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to

appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on November 26, 2014

*/s/ Shon T. Erwin*
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE